UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

ROBERT A. BRAYSHAW,

       Plaintiff,                                   Case No.: 4:09-cv-373-RS/WCS

vs.

CITY OF TALLAHASSEE, FLORIDA,
and WILLIAM N. MEGGS, etc.,

       Defendants.

_____/

## DEFENDANT MEGGS'S MOTION TO DISMISS

Defendant, WILLIAM N. MEGGS, in his official capacity as State Attorney, Second Judicial Circuit, State of Florida, by undersigned counsel, hereby moves to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. The issue before this court–the constitutionality of §843.17, Fla. Stat., upon First Amendment grounds–is wholly one of law and First Amendment jurisprudence directs dismissal as a matter of law. In that there is no set of facts that Plaintiff can present which overcomes the controlling legal principles, it is further moved that dismissal be with prejudice.

## I. The Salient Facts.

Plaintiff, who believes Tallahassee Police Officer Annette Garrett "is rude, abusive and unprofessional," wants to inform others of his opinion "and, as part of

his criticism," wants to publish "her address or phone number or both... ." Pg. 2, ¶2

of First Amended Complaint. However,  standing as a perceived obstacle is §843.17,

Fla. Stat., which reads in full as follows:

> **Publishing name and address of law enforcement officer**.–Any
> person who shall **maliciously, with intent to obstruct the due
> execution of the law** or **with the intent to intimidate, hinder, or
> interrupt any law enforcement officer in the legal performance of
> his or her duties,** publish or disseminate the **residence address or
> telephone number of any law enforcement officer while designating
> the officer as such,** without authorization of the agency which employs
> the officer, shall be guilty of a misdemeanor of the first degree,
> punishable as provided in s. 775.082 or s. 775.083. (Emphasis in text of
> statute added.)

II.  The Application of the Statute to Plaintiff's Desire to Offer Opinion.

The subject statute was enacted in 1972 and is unaccompanied by a single

reported case.  Its language is simple, straightforward and uncomplicated.  It applies

only to one who "maliciously, with the intent to (either) obstruct the due execution

of the law or with the intent to intimidate, hinder or interrupt (an officer) in the legal

performance of (the officer's duties)" publishes the fact of the officer's status, along

with residence address and telephone number, without permission.  The  purpose  of

the statute is clear from its face. It is designed in part to prevent a "get back" at a law

enforcement officer by intimidating him or her by putting the officer and family in

fear of harassment, retaliation and other forms of intimidation.  There can be no

legitimate or newsworthy purpose to be served by publishing the officer's name, residence address and phone number.

The decision to address this matter is well within the State's exercise of its police power.  It is without question that the State has broad discretion in exercising its police power.  "The discretion of the legislature is very large in the exercise of the police power, both in determining what the interests of the public require and what measures and means are reasonably necessary for the protection of such interests." Steigerwalt v. City of St. Petersburg, 316 So. 2d 554 (Fla. 1975); PBP Holding, Inc. v. Department of Revenue, 550 So. 2d 127 (Fla. 3rd DCA 1989); see also Barnett Bank of Marion County v. Gallagher, 43 F. 3d 631 (11th Cir. 1995).    The police power is the sovereign right of the government to enact laws for the protection of the lives, health, morals, safety and general welfare.  See Carroll v. State, 361 So. 2d 144 (Fla. 1978).   It does not require additional citations of authority to demonstrate that protecting those whose duty it is to enforce the law and protect the citizens from those who would violate them is the highest of police power exercises.

Against this backdrop, it must be noted that Plaintiff's desire to publish criticism of Officer Garrett remains unaffected by this statute.  He remains free to criticize and even condemn to his heart's content.  He is free to wax on her "rude,

abusive and unprofessional" behavior ad infinitum.[1] What he cannot do is maliciously and with intent to accomplish the proscribed goals, publish the officer's residence address or phone number without agency consent.

There are certain obvious aspects of this statute that undermine Plaintiff's First Amendment claim. First, there is a high level of scienter built into the provision. This is important because, in the context of obscenity statutes, the United States Supreme Court, in Smith v. California, 361 U. S. 147, 80 S. Ct. 215, 4 L. Ed. 2d 205 (1959), held that in order to prevent chilling expression protected by the First Amendment, statutes criminalizing obscenity must require proof of scienter.[2] By analogy, the challenged statute requires proof of malice accompanied by intent to engage in specific acts of obstruction of justice or proof that the person is focused on intimidation, hindering  or interrupting a law enforcement officer.   The First Amendment does not countenance the type of speech proscribed by this statute.

Second, the publication of the name, residence address and phone number of a law enforcement officer can hardly be considered "core" political speech, and there

---

[1]What constitutes "criticism" that involves publishing the officer's name and address remains unexplained.

[2]In this case, the Court struck down a strict liability statute that outlawed possession of obscene material in bookstores and other places.  The Court reasoned that if a bookseller could be jailed for stocking books the contents of which he was unaware, he might engage in self-censorship by refusing to carry books he has not read.  See United States v. Cochran, 17 F. 3d 56, 58 (3rd Cir. 1994).

4

is nothing that can be deemed "newsworthy" about this type of information.

Two key cases that address the issue here are <u>The Florida Star v. B.J.F.</u>, 491 U. S. 524, 109 S. Ct. 2603, 105 L. Ed. 2d 443 (1989) and <u>Smith v. Daily Mail Publishing Co.</u>, 443 U. S. 97, 99 S. Ct. 2667, 61 L. Ed. 2d 399 (1979).   <u>B.J.F.</u> involved a rape victim who sued a newspaper for damages for publishing her name which the newspaper obtained from a publicly released police report.  At issue was a Florida statute, §794.03, Florida Statutes. The Court, in holding that the imposition of damages on the newspaper violated the First Amendment, made it abundantly clear that it did not "accept (the) invitation to hold broadly that truthful publication may never be punished consistent with the First Amendment."  109 S. Ct. at 2609-09. <u>B.J.F.</u> was predominantly concerned with the fact that the information was provided by the government itself through a news release, leading the Court to note that "where the government itself provides information to the media, it is most appropriate to assume that the government had, but failed to utilize, far more limited means of guarding against dissemination than the extreme step of punishing truthful speech." 109 S. Ct. at 2611.[3]

The <u>B.J.F.</u> Court echoed <u>Daily Mail</u> in relying on the fact that the issue

---

[3]The <u>B.J.F.</u> Court also noted that Florida's statute contained no scienter requirement. See <u>Id.</u>

involved lawfully obtained information about a matter of public significance, saying that "[I]f a newspaper lawfully obtains truthful information about a matter of public significance then state officials may not constitutionally punish publication of the information, absent a need to further a state interest of the highest order." 109 S. Ct. at 2609. In stark contrast, the information involved in the case at bar is not of public significance, and the scienter requirement further undermines Plaintiff's claim.[4]

The B.J.F. Court further echoed Daily Mail in addressing steps the government may take to safeguard "significant interests upon which publication may impinge ... ." For example, "(t)he government may classify certain information, establish and enforce procedures ensuring its redacted release, and extend a damages remedy against the government or its officials where the government's mishandling of sensitive information leads to its dissemination...," adding that much of the risk of disclosure "can be eliminated through careful internal procedures... ." 109 S. Ct. 2609-10.

The holding in B.J.F. is therefore a limited one. "We do not hold that truthful

---

[4]A further reason that scienter is important is demonstrated by State v. Hosier, 133 P. 3d 936 (Wash. 2006) wherein a statute criminalizing alleged foreseeably communicating with a minor for immoral purposes was found to contain a predatory purpose. In the case at bar, the challenged statute requires a malicious purpose clearly contrary to the law. This case undercuts any notion that a state is barred by the First Amendment from prohibiting a person from maliciously disclosing personal information about a law enforcement officer for legally cognizable reasons as specifically set out in the subject statute.

publication is automatically constitutionally protected, or that there is no zone of personal privacy within which the State may protect the individual from intrusion by the press... .  **We hold only that where a newspaper publishes truthful information which it has lawfully obtained, punishment may be imposed, if at all, only when narrowly tailored to a state interest of the highest order... ."**[5] 109 S. Ct. at 2613.

Both <u>B.J.F.</u> and <u>Daily Mail</u> involved media publication of matters of public significance.[6]   In <u>B.J.F.</u>, the source of the newsworthy information came from a publicly released police report. In <u>Daily Mail</u>, the source of the newsworthy information was the monitoring of police band radio frequency and interviewing eyewitnesses to the offense.  Yet, despite the sources and subject matter, the Supreme Court refuses to adopt a blanket posture that all truthfully obtained information is protected by the First Amendment.   One of the significant points underlying <u>B.J.F.</u> concerns the disclosure of classified information.  Necessarily implied here is, by way of example only, information regarding the movement of troops.  The disclosure of such information would place our armed forces at peril.  It can easily be said that

---

[5]This is the essential test under the strict scrutiny standard.  As applied here, preventing a law enforcement officer and family from having their lives put at risk is a compelling state interest.  Plaintiff will certainly disagree, but that disagreement will render the Court's standard meaningless, for if the bar is set impossibly high, then it is really not a standard at all.

[6]<u>B.J.F</u>–name of the victim of rape; <u>Daily Mail</u>–name of a juvenile offender.

publishing the name, residence address and telephone number of a law enforcement officer places that person is equally at peril.

In sharp contrast to the facts in <u>B.J.F.</u> and <u>Daily Mail</u>,, the case at bar does not involve media publication of a matter of public significance. It does not involve core political speech, or core speech of any kind. And its stated purpose is clear. There is no statutory nuance or construction necessary to glean its obvious purpose.

As the Eleventh Circuit has said, "[w]hether a statute is constitutional is determined in large part by the level of scrutiny applied by the courts." <u>Ranch House, Inc. v. Amerson</u>, 238 F. 3d 1273, 1278 (11th Cir. 2001). In First Amendment cases, the usual standard of review battle lines are drawn over the application of strict scrutiny versus intermediate scrutiny. It is Meggs's position that regardless of the standard applied, the subject statute does not run afoul of the First Amendment.

The strict scrutiny standard typically applies to content-based speech in which the government seeks to suppress a particular message, usually defined as core political speech to be uttered in a traditional public forum. See <u>Citizens for Police Accountability Political Committee v. Browning,</u> 572 F. 3d 1213 (11th Cir. 2009). Under this standard, the State must demonstrate the existence of a compelling interest and that the statute is narrowly tailored to meet that interest. Protecting law enforcement officers and their families from intimidation, harassment and threats–

including preventing them from fear of having their lives threatened–and preventing law enforcement officers from being less than vigilant in the performance of their duties to protect and preserve the public safety and general welfare, are compelling state interests.  See <u>Padgett v. Donald</u>, 401 F. 3d 1273 (11th Cir. 2005)(promoting law enforcement is a compelling state interest); <u>Patrolmen's Benevolent Association of the City of New York v. The City of New York</u>, 310 F. 3d 43 (2nd Cir. 2002)(effective law enforcement is a compelling state interest.)

The narrowly tailored prong is also easily established because the subject statute applies only to the name, residence address and telephone number of a law enforcement officer–information that is used to intimidate, harass and threaten–and further applies only when it is established that the disclosure was done "maliciously, with intent to intimidate, hinder, or interrupt ... in the legal performance of (the law enforcement officer's) duties... ."  What is critical here is that the enforcement of the statute is directed toward speech that does not compromise any message at all. Plaintiff remains free to criticize at will in unfettered fashion; there is no core political or public interest speech involved here.  The primary–indeed exclusive–purpose of this statute is to protect police officers, not burden speech.

Since this cause does not involve core political speech, the appropriate standard of review is intermediate scrutiny.  When this standard is applied, the courts "ask

whether (1) the interest allegedly served is within the power of the government; (2) the regulation furthers that interest; (3) the interest served is unrelated to free expression; and (4) any incidental restriction on First Amendment freedoms is no greater than essential to further the asserted interest.  Ranch House, Inc., supra.[7] Again, the subject statute easily fits within each of these prongs.

That the interest of protecting law enforcement officers is within the power of government is a given; and the statute furthers that interest.  Third, the statute has no effect on Plaintiff's unfettered ability to criticize the officer in any manner or form of his choosing.  His "free expression" of opinion is therefore untouched.  Finally, to the extent there is a restriction on Plaintiff's First Amendment freedoms, it is no greater than what is essential to further the interest of protecting law enforcement officers from the kind of speech/conduct proscribed by the statute.

Wherefore, in that the statute at issue: (1) applies only to the disclosure of the residence address and telephone number of a law enforcement officer when identifying him or her as such; and (2) requires proof of malice and intent to obstruct, intimidate, hinder, or interrupt in the legal performance of one's duties, it serves a compelling

---

[7]By way of example only, the intermediate scrutiny test has been applied to "adult only" erotic dancing enterprises, Ranch House, Inc., supra; smoking ban by an actor as part of a theatrical production, Curious Theater Company v. Colorado Department of Public Health and Environment, 216 P. 3d 71 (Colo. App. 2008); and outdoor advertising sign ordinance directed to gasoline price and time and temperature signs, Granite State Outdoor Advertising, Inc. v. City of Clearwater, Fla., 213 F. Supp. 2d 1312 (M. D. Fla. 2002).

state interest in a manner that is narrowly tailored to accomplish the stated interest without affecting one's ability to criticize or even condemn a law enforcement officer's conduct.  Accordingly, regardless of the applicable standard of scrutiny, the statute passes First Amendment muster.

Respectfully submitted,

BILL McCOLLUM
ATTORNEY GENERAL


S/ George Waas
_____
George Waas
Special Counsel
Florida Bar No. 129976

Office of the Attorney General
PL-01 The Capitol
Tallahassee, FL 32399-1050
(850) 414-3662
(850) 488-4872 (Fax)
Counsel for Defendant Meggs

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy was filed electronically on January 5, 2010, using the court's ECF system, which automatically serves counsel of record through electronic mail.

S/ George Waas

_____

George Waas